COUPE and others v. WEATHERHEAD and others.

(*Circuit Court, D. Rhode Island.* 1883.)

1. PATENTS FOR INVENTIONS—DIVERSITY IN INVENTIONS.

Where a greater number of persons have to be employed in the operat'on of a machine formerly in use than in a patented machine, this tends to prove that the machines are not alike.

2. SAME—OMISSION OF SOME ELEMENTS AND ADDITION OF OTHERS.

Where, by the omission of some of the elements of such former machine, and the addition of other elements not useful in the old machine, an improvement results, such improvement may be patentable.

3. SAME—INFRINGEMENT.

Infringement of a claim is not escaped by the employment in a combination of a movable board, which only affects two-thirds of a certain result, when it depends on the thickness and stability of the board whether the whole operation is or is not copied.

4. SAME—PATENTABILITY.

A machine need not be automatic to be patentable. Improvements in any tool or implement used by hand in an art or industry are patentable.

In Equity.

*Wilmarth H. Thurston* and *Benj. F. Thurston*, for plaintiffs.

*Walter B. Vincent*, for defendants.

Before LOWELL and COLT, JJ.

LOWELL, J.   This bill is brought upon patent No. 213,323, granted the plaintiff Coupe, March 18, 1879.   It describes a mode of stretching and reducing to a uniform thickness what is known in the trade as raw-hide leather—that is, a hide which has been stripped of its hair, and has been softened and brought to a state in which it is very soft and flabby and much wrinkled, but has not been tanned.   The patentee says:

"My invention consists in a combination of mechanical devices which are capable of producing, in connection with hand manipulation, the desirable results of thoroughly stretching the hides and rendering them of even thickness in all parts."

The specification describes a table or beam over which the hide is to pass, and which is breast high, in order that the workmen may conveniently use it; then the hide passes over a bar or stretcher, which is somewhat arched or crowned, in order to stretch the hide transversely; it then goes to a roller to which it is clamped and over which it is slowly wound.

The workman accelerates or retards the passage of the hide by lift-

ing it up or pressing it down, and in this way the thicker parts secure a greater longtitudinal pull from the roller than do the thinner parts, and the bar, by its shape, tends to stretch the hide laterally as it passes from the table to the roller. The table and the bar have a lateral yield or adjustment to accommodate hides of different sizes.

The first claim is for the combination of the table, the stretcher, and the roller; the second, for the lateral yield in the table and stretcher; the third, for "the improvement in the method of stretching hides, which consists in dragging the hide over a stretcher, and also over a friction table or beam by means of a revolving roller, to which the hide is secured as described, whereby, as the hide is passed over the table or beam, the thicker portions of the hide are detained or made to lag by pressure applied to such thicker portions to increase at such thicker portions the friction between the hide and the table, substantially as specified."

There was a machine for stretching leather for belts well known to the patentee and to some others in the trade, which was made by modifying a splitting machine. Mr. Coupe did not, in fact, make his improvement upon this stretcher, but it is much more like his machine than anything else which preceded it.

This old machine was used upon hard tanned leather, to adapt it to be made into belts for machinery, for which purpose it must be stretched with great power, eighteen or twenty thousand pounds to the square inch, in order to take out of it all possibility of further stretching. This was done by passing the leather through a trough which was brought up against the stretcher-bar with the force we have mentioned. Since the plaintiffs' method and machine have become known, Mr. Davis, an accomplished worker in leather, has tried with some success an enlarged copy of the old belt-leather stretcher to do the work of the plaintiffs' machine. He is obliged to use a greater number of men or boys to tend the machine and prevent the pressure from ruining the hide, which, of itself, tends to prove that the machines are not alike; and we have no doubt that if the plaintiffs' devices are considered an improvement upon this old machine, they embody a patentable improvement. They omit the means for producing the pressure, and add a table not useful in the old machine, but which, in the new machine, enables the workmen to exert sufficient pressure.

The defendants at one time used a machine which closely resembles that of the plaintiff. At present they have one which works

with a trough and bar, like the old belt stretcher, with the addition of a table over which the leather passes, and which enables the workmen to spread out and manipulate the hide; upon the edge of this table is a piece of metal with grooves spreading outward, and these grooves have a tendency to stretch the hide laterally, or at least to prevent it from wrinkling; that is, to keep it to its lateral stretch, which seems to be much the same thing. The slot and bar are so placed in relation to each other that a hide is not squeezed between them, as in the old belt stretcher; but, in the legitimate attempt to avoid infringement of the plaintiffs' invention, which the defendants intended to copy as far as they lawfully might, because they had failed to come to terms with the plaintiffs for a license, they now put into the trough a piece of board, supported at either end upon blocks, about one-third the width of the trough. The operation of the machine as thus modified is known only to the defendants themselves, and Mr. Weatherhead testifies that it exerts a pressure upon the hide, how great in pounds we do not know. We understand him to say that, by passing the hide through the machine several times, all parts come sooner or later under the board, and thus substantially all the stretching is done by its aid.

Infringement of the plaintiffs' first claim is not escaped by the use of this piece of board, for, although it causes the defendants' machine to approach more nearly the old belt stretcher, still the operation must remain to some extent at least like that of the patent. The manipulation with the table and grooves must enable the operator to use all the elements of the first claim upon two-thirds of the width of the hide each time it passes through the machine, and it depends altogether on the thickness and stability of the board whether the whole operation is or is not copied. The very presence of this removable board is evidence that the old machine is not satisfactory for the new use.

The argument that a machine must be automatic in order to be patentable is not sound. A piano is not automatic, nor is any tool or implement intended for use by hand; but improvements in any such tool used in an art or industry are patentable.

In the second claim the combination is limited to a laterally-yielding stretcher, and a laterally-yielding friction table or beam. As one bar, however, in the defendant's machine is fixed, and the other has a motion up and down, we find no infringement of this claim.

The third claim appears to be for the exclusive right of using the

machine referred to in the first claim, and, as the defendants have used such a machine, they have infringed the third claim, and we do not at present see how it could be infringed otherwise than by infringing the first claim.