### LOURIE IMPLEMENT CO. v. LENHART et al.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1904.)

No. 1,885.

1. **PATENTS FOR INVENTION—WHAT ADDITIONS, OMISSIONS, AND CHANGES OF FORM DO NOT AVOID INFRINGEMENT.**

One may not escape infringement by adding to or subtracting from a patented device, by changing its form, or by making it more or less efficient, while he retains its principle and its mode of operation, and attains its result by the use of the same or of equivalent mechanical means.

2. **SAME.**

Letters patent No. 415,542, to John Lenhart, secure an adjustable sliding plate, attached by means of a bolt and a slot in the plate to the inner side of the moldboard or share of a plow, to regulate its tilting. The plate described in the specification has a thin lower edge turned toward the share, so that as it is depressed it will pass under the edge of the share, and cut the roots of grass under the turf.

*Held*, an adjustable sliding plate attached by means of a bolt and a slot in the plate to the inner side of the clip on the inner side of the moldboard of a plow, to regulate its tilting, is the mechanical equivalent of the patented device, although its lower edge is flattened in the form of a triangular shoe, so that it will not cut roots, and although it depends by the side of, and not vertically under the edge of, the plowshare.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern Division of the Southern District of Iowa.

The following is the opinion of the court below (McPherson, District Judge):

This is a bill in equity for infringement of Lenhart's patent, No. 415,542, covering an attachment or appliance to breaking plows. The complainant

---

¶ 1. See Patents, vol. 38, Cent. Dig. §§ 372, 376, 377.

Lenhart, is the patentee, and is a citizen of Hamilton county, Iowa. The Morrison Manufacturing Company is a licensee, and is an Iowa corporation, and manufactures plows and other farm implements at Ft. Madison, Iowa. The respondent Lourie Implement Company is a citizen of Iowa, and is engaged in selling plows and other machinery at Keokuk, Iowa. Deere & Co. is an Illinois corporation, and manufactures plows and machinery, at Moline, Ill. The Lourie Implement Company has sold many plows made by Deere & Co., with an attachment or appliance thereto, which attachment or appliance, it is claimed, is an infringement of the Lenhart patent above referred to, by reason of which this action has been brought. The respondents Lourie Implement Company and H. M. Lourie only have been served, and they only have appeared. The Lenhart patent, No. 415,542, was issued November 19, 1889. The answer denies that the invention of Lenhart is of utility. They deny infringement, and they allege that the Lenhart patent was anticipated by many prior patents issued to others.

The Lenhart patent consists of three claims. The first recites: "The combination, with a plow, of an adjustable plate working under the edge of the share to raise or lower the share to keep the plow level and from tilting over, and the share from wear, as and for the purpose set forth." The second claim is: "The combination, with a plow, of an adjustable side plate secured to the inner side of the share by a bolt, said plate conforming to the contour of the share, and adapted for adjustment under its edge to raise or lower the share, to keep the plow level and from tilting over, and the share from wear, as and for the purpose set forth." The third claim sets forth that the plate in question has a slot, so that it can be raised or lowered, bolted to the share, and that this plate is beveled to an edge.

Lenhart is a blacksmith, and as such for many years had sharpened plowshares, and fashioned the same, for farmers. The plow, down to the date of this patent, for a long period of time—perhaps from the time of its first use—had undergone no material change. It consisted of a share and moldboard, sometimes in one, and generally in two pieces. One great difficulty had never been overcome. If the share and point of the plow were so sharpened and fashioned as to run level, after being in use for a short or longer time the under part of the share would become dull or rounded, thereby tending to throw the edge of the share up and out of the ground, and turning the plow over towards the landside, or it would, if not properly fashioned, wing or turn over towards the plowed soil. Every one who has ever used a plow can appreciate this more easily than it can be described. This could only be overcome by repeated sharpening of the share, and by pounding the point of the share down to give it what is called a "suck." Lenhart's experience as a practical blacksmith led him to believe that this could be overcome by an appliance attached to the plow. And if it could be overcome, it would make the plow much more easily dragged by the team, and much more easily managed by the man, because, if the plow runs level, the only power required from the team is to pull the plow through the ground that is to be turned over. But if the share has a tendency upward or downward all the time, then the man must practically ride the handles, and by rigidity of his arms hold the plow level, thereby all the time using much physical power himself, and require the team to carry or drag the man. The heel plate, the subject of Lenhart's patent, obviates all the above. And especially is this so from the time the share of the plow commences to bevel or dull. The above statement of itself shows that, the heel plate adjusted as it is by the slot, so that it can be raised or lowered, it is of utility. For a time after the patent was issued, it was not generally used. But after a short time the complainants learned of it, and from that time on have put on very large numbers on the plows manufactured by them, until now they are in quite general use, and often demanded by the farmer. So that, both by reason, and the large number in use, the showing is complete that the appliance is of great utility. And if the showing was not as satisfactory as it is, I could give this defense no great consideration, from the fact that defendants themselves are urging the right to manufacture and sell an appliance or heel plate or bar to effect the very same purpose, and

obviate the very same difficulty experienced by every farmer. In other words, the defendants furnish all the requisite proof of utility.

Prior to the Lenhart patent, other patents had been issued. Many of them are in evidence, but most of them were introduced to illustrate the state of the art, and only a few are relied on to defeat the Lenhart patent. More than 50 of the patents are in evidence. Some of them are 50 years old. But it is not seriously contended that more than 3 of them suggest the improvement covered by the Lenhart patent, and these I will notice. One of them is the Welborn patent, No. 263,637. That was with reference to a device for a cultivator which drags through the earth, with no tendency to heave or wing over to the one side or to the other. A cultivator has no tendency to run out of the ground, but must be lifted out, while a breaking plow will turn to the one side or to the other, accordingly as the share is fashioned by the blacksmith, or by use and wear. Another patent relied on is the Reyner patent, No. 336,946. In that case it consisted of certain attachments to the plow; the claim being that the soil could be reached to a greater depth, and the weeds plowed under. The moldboard and share were not separate, but were combined, and were reversible, so that either edge would act as a share. The device is a thin, narrow, and pointed tongue, and is in no respect, in my opinion, like the Lenhart device, nor its equivalent in any way. The remaining patent relied on by defendants to defeat the Lenhart patent is that of Bjorkstrom, No. 397,891. In that case the real improvement intended to be covered by the patent was the knife or cutting plate. One of the plates is at or under the edge of the landside, and the other under the moldboard. But there is, or at least can be, no claim that in the device covered by the Bjorkstrom patent the plow will run level, or that it will not wing over. But if this is not so, and the plow does run level, it is because of two cutting blades, one on either side. A plow can have this appliance, assuming that the appliance could be attached to an ordinary plow, and still the plow would suck down and wing over. So it seems to me after an examination of the patent. And the evidence so shows. No one of the devices covered by these or the other patents urged by defendants have been regarded as useful, or been in use. They have all been regarded as without merit, and, in my judgment, could not have been suggestive to Lenhart. That Lenhart was a pioneer in his invention is absolutely shown by the evidence.

The defendants Deere & Co., named in the bill, but who have not appeared, are very extensive manufacturers of plows, and have been for a great many years. Defendants' expert is, and for years has been, in the employ of that company. There is nothing more than a pretense that the appliance in question, or its equivalent, was used prior to the issuance of the Lenhart patent. And this being so, it is but fair and right that this patent should have a fair and liberal construction. The authorities exact such a holding. His claims Nos. 1 and 2 are to keep the plow level. His correspondence with his Washington solicitor who procured his patent shows that such was in his mind, and all that was in his mind. In one letter he stated, "The object and purpose of which, when in its proper place, is to hold the plow level and from winging over." In another letter: "Will keep the plow level, and will prevent the plow from running on the wing or bar; and it will serve to correct the bearing of the plow, and thereby lighten the draft and make the plow easy to control." In another letter: "It would be better to set forth the purpose fully in the claim, the great object being to keep the plow level." The Washington solicitor, or some one, seemed to be determined to get a cutting function specified in the patent, but the old blacksmith kept pressing the point that it was to keep the plow level, and thereby lighten the draft and make the plow more easily controlled. Complainants rely on claims Nos. 1 and 2 of the Lenhart patent. But defendants say that claim No. 3 and the specifications show that it was also for cutting the soil, and there is some force in this argument. But taking the specifications in their entirety, I do not agree with the contention, and content myself with announcing the conclusion, as my holding, that the Lenhart patent is valid, and that it covers a device of utility. It is one of practicability, and of con-

-siderable, and perhaps of great, commercial value. And this being so, it only remains to ascertain whether defendants are guilty of infringement.

I have already stated that the essential feature of the Lenhart patent was not a device for cutting, but was to hold the plow level. The device used on Deere & Co. plows sold by the defendant Lourie Implement Company is by their expert conceded to be for that, and that only. Defendants stoutly deny that their device is for cutting. In other words, their device is a shoe, and nothing else, and performs no other function. This being so, and it is a fact appearing from the evidence aside from their claim, and the essential function of the Lenhart device being the same, and the defendants being engaged in selling the Deere & Co. device, it follows that they are liable as infringers.

I have no purpose of discussing the case further than to show in a general way what my views are, and the reasons therefor.

The complainants are allowed a decree, which will be signed when one has been presented to defendants' counsel, and then given to me for signature, or corrected if need be.

John R. Bennett, for appellant.

Charles K. Offield and Charles C. Linthicum, for appellees.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal by the Lourie Implement Company, a corporation, from a decree that it has infringed the first and second claims of letters patent No. 415,542, to John Lenhart, for a new and useful improvement in plows, and that it must cease its infringement.

The patented device is a slotted slide-plate adjustable to the inner side of the heel of the share or moldboard of an ordinary walking plow to hold the plow level, to regulate its tendency to tilt to the side of the moldboard, and to preserve the outer edge of the share from wearing off while other parts of it are in a better condition. The slide-plate is held in place by a bolt which passes through the moldboard and through the slot in the plate, and is secured by a nut. By loosening the nut the plate may be depressed so that its lower edge will register with, or extend under the edge of, the share, or it may be raised so that its lower edge will be above the edge of the share. The depression of the plate brings it below the plane formed by the lower edges of the landslide and the plowshare, places it in contact with the bottom of the furrow on the moldboard's side of the plow, and in this way it prevents the plow from winging down, or causes it to tilt toward the landside. By the use of the bolt and slot, the plate may be adjusted to keep the plow level, and to overcome any tendency which it may have to wing down or or to wing up.

In his specification the patentee describes a slide-plate, the lower edge of which is thin and is turned out, and which may be adjusted so far above the edge of the plowshare that it will not extend down to the lower plane of the plow, and will not affect its operation, or it may be dropped so low that its lower edge will extend under the edge of the plow, and engage the bottom of the furrow. He states that the objects of his invention are to prevent the plow from winging down, and to preserve the heel of the share from wear. In the latter portion of his specification he states that the lower edge of the plate is also found to be especially useful when it projects under the edge of the

share in cutting the roots under the sod. He describes a plate with a gradual taper from the slot to its lower sharp edge, but declares that he does not confine his invention to any particular form of the lower portion of the plate, and that it may be made of any desired construction, so that it will adjust the required degree of elevation of the moldboard's side of the plow, and protect it from wear, and furnish a cutting adjustable edge projecting beyond the share. The first and second claims of the patent read in this way:

"(1) The combination, with a plow, of an adjustable plate working under the edge of the share to raise or lower the share to keep the plow level and from tilting over, and the share from wear, as and for the purpose set forth.

"(2) The combination, with a plow, of an adjustable slide-plate secured to the inner side of the share by a bolt, said plate conforming to the contour of the share, and adapted for adjustment under its edge to raise or lower the share to keep the plow level and from tilting over, and the share from wear, as and for the purpose set forth."

The appellant calls its device a "shoe." It is a slotted sliding plate attached to the clip or brace on the inner side of the moldboard of the plow by means of a bolt which extends through the moldboard, the clip, and the slot in the slide, and is fastened by a nut. By means of this bolt and slot the appellant's slide is so adjustable that it may be depressed so far that its foot will extend below the plane of the lower edges of the landside and the moldboard of the plow, and will engage the bottom of the furrow. In this position it will counteract the tendency of the plow to wing down, and prevent the wear of the edge of the moldboard to some extent by holding it up from the bottom of the furrow. By means of the bolt and slot the counteracting tendency of the slide may be adjusted to the strength of the tendency of the plow to wing down. While the appellant accomplishes in this way the objects which Lenhart declares in his specification he made his invention to attain, to wit, the regulation of the tilting of the plow, and the prevention of the wear of the share, the appellant gives a different form to the lower part of its device, so that it does not pass under the edge of the plowshare, and does not cut the roots of the grass. Instead of making the lower part of the slide thin, and turning it out, so that, as it is depressed, it will pass under the edge of the plowshare and cut the roots, the appellant thickens, widens, and flattens the lower part of its slide into the form of a triangular shoe, and, by means of clamps extending from the slide to the clip or the moldboard, holds the foot of it about seven-eighths of an inch away from the edge of the plowshare when it is extended below the plane of the bottom of the plow. The appellees make their plows so that when they are new they will run level, or will not wing down, and as the shares wear away they adjust their sliding plates to counteract the tendency of the plows to wing down, and thus keep them level. The appellant makes its plows so that without the sliding plate or shoes they have a strong tendency to wing down when they are new, and puts its sliding plates or shoes at once into operation to counteract this tendency, by extending the feet of them below the planes of the bottoms of the plows when they are first put in operation.

The appellant insists that its device does not infringe upon the claims under consideration, because it does not cut the roots of the sod, and

because when it is depressed it does not pass under the lower edge of the plowshare, although it passes below the plane of that edge upon the side of it. In support of this contention, it insists that the invention of Lenhart is so limited by the prior art that, if its machine infringes, his invention is anticipated and the patent is invalid. The principle of Lenhart's invention is the regulation of the tilting of the ordinary walking plow by means of an adjustable sliding plate attached to the under side of the moldboard or share of the plow. Its mode of operation consists in the adjusting of this plate by sliding it up and down by means of the slot, the bolt, and the nut, so that the plow will run level. The patents which counsel for the appellant cites to show that this principle and mode of operation, which the appellant has clearly embodied in its sliding shoe, were disclosed before Lenhart invented his plate, are No. 226,750, to F. Simonds, April 18, 1882; No. 274,491, to W. K. Harrell, March 27, 1883; No. 397,891, to A. F. Bjorkstrom, February 19, 1889; No. 336,946, to F. Reyner, March 2, 1886; and No. 263,637, to W. J. N. Welborn, August 29, 1882. The patents to Simonds and Harrell do not describe sliding plates upon the moldboards of plows, but shoes beneath the plows, upon which they bear when in operation; and these shoes lack the essential principle of Lenhart's invention—its adjustability to the changing tendency of the plows to tilt toward the side of the moldboards. The patent to Bjorkstrom shows a plow provided with two shoes—one under the heel of the landside, and the other under the heel of the moldboard. The shoe under the heel of the moldboard consists of a small, tapered plate, pivoted at its front end to the inner side of the moldboard, with its rear end adjustable vertically by means of a slotted ear which operates upon a bolt in the moldboard of the plow. The forward end of the tapered shoe cannot be raised or depressed without removing the entire shoe from the plow. This device therefore lacks the requisite adjustability which the sliding plates of Lenhart and the appellant possess, by means of which the entire plates may be raised or depressed without detaching them from the plows. Bjorkstrom's device was not conceived or constructed to regulate the tilting of the plow toward the side of the moldboard, but to serve the same purpose that the shoe on the landside of his plow was made to serve—the purpose of shoes on a sled. It was made to be what Bjorkstrom calls it—a wear-plate. When the appellant adopts the shoe of Bjorkstrom, it will not infringe the patent to Lenhart, because it will not then accomplish the purpose which his invention was made to attain, and will not avail itself of the principle which Lenhart's device involves. It may be that it is because it seeks to attain that purpose that it has neglected Bjorkstrom's pivoted shoe, and appropriated Lenhart's sliding plate. The patents to Welborn and Reyner have little relevancy to the issue in this case. The former describes a guide, and the latter a stirring attachment to a plow. Neither of the patents discloses an adjustable sliding plate for regulating the tilting of the plow, or any other equivalent means for accomplishing that purpose. This brief review of the patents cited by counsel for the appellant discloses the fact that there is nothing in them which describes or suggests the adjustable sliding plate of Lenhart; no description of any device which will accomplish the purpose of his inven-

tion; nothing that places the adjustable, slotted, sliding plate of the appellant, with its blunted, flattened lower edge, beyond the limits of the grant to Lenhart, or that relieves the Lourie Company of the infringement of which the court below found it to be guilty.

But counsel for the appellant persuasively argues that his client does not infringe upon the grant to Lenhart, because the only device secured by the first and second claims of the patent to him is an adjustable plate which slides under the edge of the share to raise or lower it, and which cuts the roots beneath the turning turf, and that the sliding plate of the appellant never projects under the edge of the share, and never cuts the roots beneath the sod. This construction of the two claims of the appellee which have been quoted, however, does not commend itself to our judgment. It is too narrow, refined, and technical. It permits a nullification of the grant by a mere change of the form of the foot of the device from a sharp, turned edge, to a blunted, straight edge, while the changed machine retains the principle and the mode of operation and performs the function sought and secured by the patented device. Grants of letters patent should receive a fair interpretation—one that vitalizes rather than one that paralyzes them. If the sliding, adjustable plate of the appellant had been disclosed in the prior art, and if the only novelty or patentability of Lenhart's device consisted of the special form of its lower edge, whereby it was adapted to pass under the edge of the plowshare and to cut the roots of the grass, his patent might be limited to a slide of that specific form. Sandwich Enterprise Co. v. Joliet Mfg. Co., 33 C. C. A. 491, 493, 91 Fed. 254, 256; Campbell v. Richardson, 76 Fed. 976, 22 C. C. A. 669. This, however, was not the case. No one before Lenhart regulated the tilting of the ordinary walking plow by an adjustable sliding plate on the inner side of the moldboard or share. He discovered the principle and the mode of operation by which he has effected this regulation. He was the original inventor of the slotted sliding plate, by means of which the desideratum he sought was first attained. The purpose of the plate and of the invention was not to cut the roots of the grass beneath the sod, but to regulate the tilting of the plow. The cutting of the roots was but an incident of the particular form of the plate which Lenhart described. But that form was not the essence of his invention, and it is neither mentioned nor claimed in either of the two claims of the patent which are here in litigation.

May the appellant escape liability for infringement because, instead of making the foot of its adjustable plate thin, and bending or turning it toward the plowshare, so that in operation it would pass under it and cut the roots of the grass, it has made it thick and blunt, and extending vertically downward below the plane of the plow seveneighths of an inch distant from, and on the side of the edge of, the plowshare? Mere changes of the form of a patented device, where the principle or mode of operation is adopted, will not avoid infringement, unless the form of the machine is the distinguishing characteristic of the invention. National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 711, 45 C. C. A. 544, 562;

Kinloch Tel. Co. v. Western Electric Co., 51 C. C. A. 362, 365, 113 Fed. 652, 655. The distinguishing characteristic of this invention was not the thinness or bend of the sliding plate, but its position and adjustability upon the moldboard.

A copy of the thing described in a patent, either without variation, or with such variations as are consistent with its being in substance the same thing, is for all the purposes of the patent law the same device as that described in the patent. Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650. One who claims and secures a patent for a new machine thereby necessarily claims and secures a patent for every mechanical equivalent for that device, because, within the meaning of the patent law, every mechanical equivalent of a device is the same thing as the device itself. A device which is constructed on the same principle, which has the same mode of operation, and which accomplishes the same result as another by the same means, or by equivalent mechanical means, is the same device, and a claim in a patent of one such device claims and secures the other. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935. The sliding, slotted, adjustable plate of the appellant, with its thickened, flattened lower edge or foot by the side of, and seven-eighths of an inch distant from, the edge of the share of the plow, involves the same principle, has the same mode of operation, and performs the same function—the regulation of the tilting of the plow—by mechanical means equivalent to the adjustable sliding plate of Lenhart, with its thin edge bent against the plowshare so that it may slide under its edge when it is depressed below it. One may not escape infringement by adding to or subtracting from a patented device, by changing its form, or by making it more or less efficient, while he retains its principle and mode of operation, and attains its result by the use of the same or of equivalent mechanical means. Walker on Patents, §§ 347, 348; Sewall v. Jones, 91 U. S. 171, 183, 23 L. Ed. 275; Coupe v. Weatherhead (C. C.) 16 Fed. 673, 675.

The decree below is affirmed.